**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MARCUS K. POWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:26-cv-00811** |
| | ) | |
| **CSL PLASMA,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION AND ORDER

Pro se plaintiff Marcus K. Powell filed a Complaint for Employment Discrimination (Doc. No. 1) against his former employer, CSL Plasma. With the Complaint, Plaintiff filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.) Two days later, Plaintiff filed an Amended Complaint (Doc. No. 6), which supplanted the original complaint and thus became his operative pleading in this case.

The case is before the Court for ruling on Plaintiff's IFP application and initial review of the Amended Complaint.

## I. APPLICATION TO PROCEED IFP

Plaintiff's IFP application contains his report that, following the job loss that is the subject of this action, his monthly income consists of only public-assistance benefits. (Doc. No. 2 at 1–2.) He has minimal cash available to him and owns no assets. The IFP application thus sufficiently demonstrates that he cannot pay the $405 civil filing fee in advance "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP application (Doc. No. 2) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

A. <u>Legal Standard</u>

The Court must conduct an initial review and dismiss the Amended Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Amended Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must also afford the pro se pleading a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

B. <u>Facts</u>

The Amended Complaint asserts that, on May 1, 2026, Defendant retaliated against Plaintiff on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964. (Doc. No. 6 at 3–4.) Plaintiff filed a charge of discrimination with the Equal Employment Opportunity

Commission (EEOC) on May 4, and the EEOC issued a Notice of Right to Sue on May 29, 2026. (*Id.* at 5.) The Notice of Right to Sue is attached to the Amended Complaint. (Doc. No. 6-1.)

Plaintiff provides the facts upon which his this action is based in an attachment to the Amended Complaint. (Doc. No. 6-2 at 18–20.)[1] He alleges that he was hired by CSL Plasma as a Donor Support Technician in April 2026, and that his duties were "to set up the donor machine, so that the donors could donate plasma." (*Id.* at 18.) On April 28, 2026, Plaintiff decided to donate plasma himself. While doing so, he observed a phlebotomist-in-training named Brandon wearing a Bluetooth earbud during his shift. (*Id.*)

Plaintiff "has always started his day praising his God through [listening to] gospel songs and church sermons," and he did so "throughout his orientation" in a classroom at CSL Plasma. (*Id.*) Several days after his orientation ended, on May 1, 2026, "loud vulgar music" was being played on the "Donation floor" at CSL Plasma during Plaintiff's shift, so he decided "to insert one [B]luetooth earbud in one of his ears to play gospel music and church sermons," "to strengthen his spirit and to praise his God." (*Id.*) After a few hours, Plaintiff noticed a supervisor named Grace "trying to get his attention." (*Id.*) After removing his earbud, Plaintiff still could not hear what Grace was saying because of the loud music being played on the Donation floor, so Grace drew closer and stated, "[Y]ou can't have that earbud in your ear." (*Id.*) Plaintiff responded, "I'm a Christian and I can't listen to that vulgar music. I have to listen to gospel songs and church sermons." (*Id.*) Grace insisted that he could not have an earbud in his ear, and although she offered to turn the music down, she never did so. (*Id.* at 18–19.)

After his workday was done, Plaintiff decided to again donate plasma. Grace called him to her desk to initiate the donation process and then asked him for his donor number. (*Id.* at 19.)

---

[1] The lengthy "introduction" to those facts (Doc. No. 6-2 at 1–17) does not contain any information relevant to the claim at issue in this case.

Grace then yelled, “You have to go see medical!” (*Id.*) Plaintiff was humiliated, because “everyone knows that means you have a disease.” (*Id.*) Everyone else in line to donate stared at Plaintiff as he walked to medical, where a nurse named Dave told him that he had tested positive for syphilis and that “every manager, supervisor and nurse knew about this positive test result.” (*Id.*)

The Complaint alleges that, “prior to … making a complaint about his religion practice, the Plaintiff was never notified by mail, phone call, nor was told in person about this test result.” (*Id.*) He did not believe the report that he tested positive for syphilis, “[d]ue to the fact that he ha[d] been celibate for a number of months” and had been donating at two other plasma donation centers without a positive test result. (*Id.*) But it became clear to Plaintiff that even a security guard at CSL Plasma had heard that he had allegedly tested positive, when that guard accompanied Nurse Dave into the medical room, saw Plaintiff, and immediately swore and “ran out of the room.” (*Id.* at 20.) Plaintiff later saw someone at a Dollar General Store who had been at CSL Plasma to donate on May 1, and that person told another person she was with that Plaintiff “got that package,” which is allegedly slang for having a sexually transmitted disease. (*Id.*)

Plaintiff returned to CSL Plasma the next day, and while still in the parking lot, he received a text message from an unknown number stating, “[Y]our sexual partner has chose[n] to remain anonymous” but “has tested positive for an STD,” so he should “go get tested as well.” (*Id.*) Plaintiff alleges that “CSL Plasma found this website and entered the Plaintiff’s number for him to receive this text.” (*Id.*) When Plaintiff left the building, his co-workers were staring at him and not speaking to him. (*Id.*) Too humiliated to return to work, Plaintiff “was forced to resign.” (*Id.*) He alleges that, had he not resigned when he did, “the hostile work environment would’ve continued.” (*Id.*)

C. Analysis

Plaintiff asserts two claims under Title VII. First, he claims that he was discriminated against on May 1, 2026, when his superiors at CSL Plasma refused to either turn down music which Plaintiff found offensive or allow him to wear an earbud so he could instead listen to gospel songs and sermons. Although he complained that being forced to listen to the music being played aloud offended his religious beliefs, no relief was provided, so he claims discrimination in the form of a religiously hostile work environment. Second, Plaintiff claims that his assertion of religious beliefs resulted in retaliatory action by Defendant, when a supervisor told him during an after-work attempt to donate plasma—in front of other employees and members of the public—that he needed to leave the donation area and report to medical, where news that he had tested positive for syphilis was revealed to him and to other employees.

"[T]o state an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, a complaint 'must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that the defendant discriminated against the plaintiff regarding [his] employment, because of [his] race, color, religion, sex, or national origin.'" *Washington v. First Nat'l Bank of Pennsylvania*, 179 F.4th 1008, 1014 (6th Cir. 2026) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)) (internal quotation marks omitted). In this case, Defendant is not accused of acting to inflict "some harm respecting an identifiable term or condition of [Plaintiff's] employment," *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024), but of refusing to accommodate his assertion of religious rights on the day in question.

If, in claiming a religiously hostile work environment, "the complaint alleges only isolated instances of conduct, a high degree of hostility is required to support a claim of a hostile work

environment. This is because a hostile work environment claim requires the plaintiff to demonstrate a[n] [anti-religious] culture that is so pervasive it effectively alters the conditions of employment." *Garcimonde-Fisher v. Area203 Mktg., LLC*, 105 F. Supp. 3d 825, 840 (E.D. Tenn. 2015) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In this case, even if the Court were to assume that the refusal to allow Plaintiff to insulate himself from the music he found offensive was a hostile act directed at Plaintiff's Christian religious beliefs, *but see Rivera v. Puerto Rico Aqueduct & Sewers Auth.*, 331 F.3d 183, 190 (1st Cir. 2003) (finding that hostile work environment claim based on plaintiff's exposure to vulgar song "to which all [in the office] were subjected" could not overcome "conceptual gap between an environment that is offensive to a person of strong religious sensibilities and an environment that is offensive because of hostility to the religion guiding those sensibilities"), it is plain as a matter of law that one isolated instance of Plaintiff being told he could not have an earbud in but had to listen to music he found offensive does not amount to a workplace culture so pervaded by anti-Christian or anti-religious bias that it amounts to a hostile work environment.

"With respect to retaliation," Plaintiff asserts, "[o]n the same day [he] want[ed] to practice his religion, [b]ut was told that he couldn't, CSL Plasma [r]etaliated against the Plaintiff by telling him [and others] that he tested positive for an STD." (Doc. No. 6-2 at 21.) To state a viable retaliation claim, "a plaintiff must allege sufficient facts to support a reasonable inference that h[is] employer discriminated against h[im] 'because [he] has opposed any practice made an unlawful employment practice by' Title VII." *Ray v. Fisk Univ.*, No. 3:19-CV-00874, 2021 WL 746047, at *7 (M.D. Tenn. Jan. 19, 2021), *report and recommendation adopted*, 2021 WL 734438 (M.D. Tenn. Feb. 25, 2021) (citing 42 U.S.C. § 2000e-3(a)). Even assuming that Plaintiff's request to use an earbud while working or to have the offensive music turned down constituted opposition to an

unlawful employment practice, he has offered no facts from which the Court could infer that the disclosure of his positive test result—either after his shift ended on May 1, 2026, or the next day in a text message which Plaintiff posits "had nothing to do with anyone besides CSL Plasma" (Doc. No. 6-2 at 20))—had anything to do with his assertion of religious rights earlier in the day. After he complied with his supervisor's request to remove his earbud, he apparently had no further interaction with anyone concerning the matter over the remainder of his work shift, even though the vulgar music presumably continued playing. The alleged retaliatory action only occurred after Plaintiff's work shift ended, when he decided to stay and donate plasma for the second time at CSL Plasma. Despite Plaintiff's conclusory assertions, the factual allegations of the Amended Complaint do not support a reasonable inference that Defendant retaliated against Plaintiff because he objected on religious grounds to the music being played in the workplace.

## III. CONCLUSION

For the above reasons, this case is **DISMISSED** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. *Id.* § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment under Fed. R. Civ. P. 58(b)(1) and close the file.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE